## Bodan v. Fickett

*Robert F. Claraval*, for plaintiffs.
*James R. Humer*, for defendants.

SHUGHART, *P.J.*, August 6, 1982—Plaintiffs have brought this action in assumpsit alleging a breach of an implied warranty of habitability. Defendants' preliminary objections in the nature of a demurrer, a motion for a more specific complaint, and a motion to strike are before us.

The initial question is whether plaintiffs' complaint states a cause of action. The pleaded facts, admitted for the purposes of this motion, see Gekas v. Shapp, 469 Pa. 1, 5-6, 364 A. 2d 691, 693 (1976), and the inferences reasonably deducible therefrom, indicate that on or about May 24, 1978, plaintiffs agreed, in writing, to buy from defendants, builders, a new single-family dwelling. The dwelling was constructed, and plaintiffs took possession on or about August 25, 1978. Thereafter they discovered various defects including, among

others, improperly installed heating and air conditioning systems, which allegedly pose a very dangerous fire hazard; deficiencies in electrical connections; an unsecured air conditioning unit; excessive cracking of a concrete floor; and various structural defects. According to plaintiffs, these defects, the result of unworkmanlike construction, have rendered the dwelling unsafe and uninhabitable.

It is well settled in Pennsylvania that a "builder-vendor impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended—habitation." Elderkin v. Gaster, 447 Pa. 118, 128, 288 A. 2d 771, 777 (1972). In rejecting the common-law doctrine of caveat emptor in sales of new homes by builder-vendors, the Pennsylvania Supreme Court joined the growing number of states that have recognized the unusual dependent relationship of the vendee to the builder-vendor. In most cases, the vendee is at the mercy of the builder-vendor; he simply has no other reasonable choice but to rely on the skill and integrity of the builder. The opportunity for concealment abounds. Also, because of the nature of the beast, many defects are just not apparent when the dwelling is new; instead, they seem to awaken only after the final payment is made and the moving van is long gone. Undoubtedly, the builder-vendor is in a dominant position, and because of this position, he must be the one to "bear the risk that a home which he has built will be functional and habitable in accordance with contemporary community standards." Id.

As evident by the language used by the Supreme Court in Elderkin—and as expressly recognized by

the court in its opinion—this implied warranty does not lend itself to clearly defined parameters. Unfortunately, those parameters are almost as clouded now as they were immediately after Elderkin; there has been surprisingly little case law developed in Pennsylvania since that time. Nevertheless, defendants have brought to our attention a recent case from neighboring Franklin County that—defense counsel argues—has facts similar to ours and supports their position that plaintiffs have failed to plead a cause of action.

In that Franklin County case, Gallagher v. White Rock, Inc., 21 D. & C. 3d 106 (1981), the court was forced to address the nebulous concept of habitability. Although not expressly stated, the court seems to conclude that, in essence, habitability equates to livability. By anyone's standards, the defects alleged in Gallagher were significant. Nevertheless, they were not sufficient to support a cause of action for breach of an implied warranty. We have great respect for our brethren on the Franklin County Court, but we believe the court in Gallagher too strictly applied the warranty announced in Elderkin and decline to follow the decision.

Disagreement over the proper scope of this implied warranty is—we believe—not only to be expected, but is also inevitable. The root cause is the unfortunate use of the term "habitability." In common usage, habitability connotes livability. That which is habitable protects its occupants from the elements and provides a reasonably safe haven for rest. Such a narrow, and admittedly purer, concept of habitability was reflected by the Illinois Appellate Court in Goggin v. Fox Valley Construction Corp., 48 Ill. App. 3d 103, 365 N.E. 2d 509 (1977)

(quoted with approval in Gallagher v. White Rock, Inc., supra).[1]

The majority of courts have rejected a restrictive approach and have held that the implied warranty of habitability encompasses more than the livability of the dwelling. See, e.g., Petersen v. Hubschman Construction Co., 27 Ill. Dec. 746, 389 N.E. 2d 1154 (1979); Banville v. Huckins, 407 A. 2d 294 (Me. 1979). Typical is the Maine approach. As stated by the Supreme Judicial Court of Maine in Banville v. Huckins, 407 A. 2d 294 (Me. 1979),

[e]very minor defect in a new home does not necessarily make the structure uninhabitable. On the other hand, the warranty should not be defined in such strict terms as to require the defect to be of such magnitude as to require that the structure be deemed unlivable.

. . . Whether or not a particular defect renders the dwelling 'unsuitable' necessarily requires inquiry as to whether a reasonable person faced with such a defect would be warranted in concluding that a major impediment to habitation existed: Id. at 297. See also Jeanguneat v. Jackie Hames Construction Co., 576 P. 2d 761, 764 (Ok. 1978) ("test is reasonableness and not perfection").

The reasonableness standard is also at the heart of the implied warranty recognized in Elderkin. A builder-vendor, the court announced, must bear the risk that the dwelling will be "functional and habitable in accordance with contemporary standards." 447 Pa. at 128, 288 A. 2d at 777 (1972).

---

1. The portion of Goggin quoted in Gallagher was not only dicta, but was also expressly rejected by the Illinois Supreme Court in Petersen v. Hubschman Construction Co., 27 Ill. Dec. 746, 389 N.E. 2d 1154 (1979).

(Emphasis added.) The dwelling that he builds must be constructed "in a reasonably workmanlike manner"[2] and be fit for habitation: Id. Whether these standards are met is a question for the trier of fact on a case-by-case basis: Id. at 126-27 n.13, 288 A. 2d at 776; see also Pugh v. Holmes, 486 Pa. 272, 289, 405 A. 2d 897, 905 (1979) (adopting implied warranty of habitability in residential leases). So long as plaintiff has pleaded facts from which a factfinder could reasonably infer a breach, that is, facts that show poor workmanship, resulting in an unfit habitat, then the court should resist the temptation to impose its standards on plaintiff by sustaining a demurrer.

In the present action plaintiffs have alleged various defects in the construction of their home that, they submit, have rendered it unsafe and unfit for habitation. It would be premature of us, at this stage of the proceedings, to decide whether these defects, if proved, constitute a breach of the implied warranty of habitability. Therefore, defendants' demurrer must be overruled.

Defendants' preliminary objections also include a motion for a more specific complaint. According to their motion, defendants object to the omission of construction specifications from plaintiffs' complaint. As previously stated, however, the theory upon which plaintiffs rely is one of implied warranty. The issue is not whether the construction complied with contract specifications; it is whether the construction was performed in a workmanlike manner and whether the dwelling is fit for habita-

2. This court has long recognized that "a builder impliedly warrants that his construction will be performed in a good and workmanlike manner." Koval v. Country & Town Homes, Inc., 9 Cumberland 109, 112 (1958) (preliminary objections overruled). See also Harrison v. Heagy, 81 Dauphin. 7 (1963).

tion. We see no reason why plaintiffs should be required to plead specifications. Compliance with contract specifications may constitute a defense, but it is not a matter that need be pled by plaintiffs.

Lastly, defendants have moved to strike three exhibits from plaintiffs' complaint on the grounds that they constitute evidence. Evidentiary matters need not and should not be annexed to the complaint, but if they are they may be disregarded as surplusage, Goodrich-Amram 2d 1019(h):3. Striking them from the complaint is unnecessary.

## ORDER

And now, August 6, 1982, for the reasons set forth in the opinion filed this date, defendants' preliminary objections to plaintiffs' complaint are overruled, and defendants are given 20 days in which to file an answer.